# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR DeLEON,<br><br>             Petitioner,<br><br>    v.<br><br>IVAN D. CLAY, Warden,<br><br>             Respondent. | 1:07cv0536 AWI DLB HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>(Document 1) |

Petitioner Hector DeLeon ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**[1]

On August 14, 2003, in the Tulare County Superior Court, a jury convicted Petitioner of driving under the influence causing injury, being under the influence of heroin and driving while an addict (case 97490). The jury also found true the great bodily injury enhancement. After the

---

[1] This information is derived from the petition for writ of habeas corpus and Respondent's answer to the petition.

1

court denied his motion to withdraw his plea in a prior case (case 36722), he was sentenced to an aggregate term of 45 years to life.[2]

Case 36722 stemmed from a charge of residential burglary in the Tulare County Superior Court, filed in October 1995. On January 22, 1996, pursuant to a negotiated disposition, Petitioner pled no contest in exchange for a four-year prison sentence. He was released on his own recognizance, but failed to appear for sentencing on February 20, 1996. The next day, the judge issued a bench warrant for his arrest.

Petitioner appealed to the Fifth District Court of Appeal. The court remanded the case on December 17, 2004, finding that Petitioner did not receive the benefit of the 1996 plea bargain. On remand, the trial court was instructed to either allow Petitioner to withdraw his plea or sentence him to the original agreed-upon term of four years.

On April 22, 2005, the trial court modified the sentence in case 36722 by staying the one-year prior prison term enhancement. The court reimposed the same sentences on the remaining counts, for an aggregate sentence of 44 years to life.

On April 6, 2006, the Court of Appeal affirmed the judgment and sentence.

Petitioner then filed a petition for review in the California Supreme Court, which was denied on June 14, 2006.

On April 6, 2007, Petitioner filed the instant federal petition. He argues that (1) he should have been allowed to withdraw his plea in case 36722; (2) the sentence in case 36722 should not have been used to enhance case 97490; and (3) the trial court erred imposing consecutive sentences.

Respondent filed its answer on October 22, 2007.

Petitioner did not file a traverse.

---

[2] The prison term was calculated as follows: in case 36722, Petitioner received four years for residential burglary, plus one year for the prior prison term; in case 97490, Petitioner received 25 years to life for driving under the influence causing injury, five years for the great bodily injury enhancement, and 10 years for the two prior serious felony enhancements.

# STATEMENT OF FACTS[3]

**The 1995 Burglary**

On September 6, 1995, Raul Ensoco returned to his home and found Petitioner in his yard. Petitioner told Ensoco he was working for someone, and Ensoco told Petitioner he must be at the wrong house. Ensoco left again and returned approximately 15 minutes later to find the door to his house open and a strange car in the driveway with the trunk open. Petitioner ran out of Ensoco's house, jumped into the car and drove away.

**The 2002 DUI**

Mid-morning on August 4, 2002, a witness spotted Petitioner driving erratically from Tulare to Corcoran on Paige Road. Petitioner was swerving and repeatedly crossing the middle divider line, as well as clapping his hands above his head while he was driving. His speed varied from 25 to 60 miles per hour. His driving was so erratic it prompted the witness to call 911 twice. Petitioner subsequently overcorrected after a turn and crashed into an oncoming white Plymouth Neon. The car had two women, two men and a child in it. The child suffered a broken leg in the accident.

California Highway Patrol Officer Mark Berlin responded to the accident. Petitioner had been driving a brown Buick when he crashed into the white Neon. Berlin spoke briefly with Petitioner at the accident scene and Petitioner admitted he had been driving the Buick. Berlin later spoke with Petitioner at the hospital, and observed Petitioner's eyes to be constricted, his speech slow, and he drifted in and out of consciousness. Petitioner admitted he was feeling the effects of a heroin injection and that he was a "registered heroin addict" in California. Berlin observed recent injection sites on Petitioner's upper left arm. Berlin opined that Petitioner had been driving under the influence of heroin.

There were opiates in Petitioner's urine sample, and forensic toxicologist Roger Peterson testified that the morphine found in Petitioner's urine indicated recent heroin use.

---

[3] The Statement of Facts is taken from the Fifth District Court of Appeal's December 17, 2004, opinion.

Petitioner testified on his own behalf. He stated that he has diabetes and a heart condition and was not feeling well the day of the accident. He became drowsy while driving and believes he blacked out. He admitted being convicted of second degree robbery and admitted to using heroin "off and on." He denied being under the influence of any drug on the day of the accident.

**DISCUSSION**

A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. Petitioner challenges his conviction imposed by the Tulare County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.  Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus

will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.     Withdrawal of Plea in Case 36722

Petitioner first argues that he should have been allowed to withdraw his no contest plea in case 36722. His argument is based on his belief that he did not receive the benefit of the plea bargain, i.e., commitment to the California Rehabilitation Center ("CRC").

*Background*

On January 22, 1996, in case 36722, Petitioner entered his plea of no contest to the residential burglary charges, admitted that he had served a prior prison term and had suffered three prior felony convictions, as follows:

5

> The Court: I have advised them that if Mr. DeLeon pleads to these charges he will be sentenced to state prison for a term of four years. I'll refer him for a medical examination to determine if he is addicted or likely to become addicted to controlled substances. And if he is found to be so in that condition, I will suspend proceedings and commit him to the California Rehabilitation Center.

The judge asked Petitioner if he understood this, as well as the rights he was giving up, and he responded, "Yes, sir." The court set sentencing for February 20, 1996, and released Petitioner on his own recognizance. The judge continued, "I want to advise you that the indicated sentence that I have given today is - I will not follow that if you fail to appear for sentencing in this matter. Do you understand that?" Petitioner responded that he understood. Lodged Doc. 43-44.

Petitioner failed to appear at sentencing. On February 21, 1996, a bench warrant issued.

Prior to sentencing in case 97490, Petitioner moved to withdraw the 1996 plea, arguing that the judge indicated that if he failed to make any appearances, the plea would be automatically withdrawn and he would be required to stand trial. The court denied the motion, finding that the judge only indicated that the sentence would not apply if Petitioner failed to appear, and did not give Petitioner the right to withdraw his plea.

On September 11, 2003, Petitioner was sentenced in case 36722 to four years for residential burglary, plus one year for the prison term.

The Fifth District Court of Appeal eventually remanded the case after finding that Petitioner did not receive the benefit of his 1996 plea bargain. The court agreed with Petitioner that the trial court's sanction in increasing his sentence due to his nonappearance was not negotiated. "He agreed to a four-year state prison sentence; he received a five-year prison sentence." Lodged Doc. 4, at 6. On remand, the trial court was instructed to (1) consider the propriety of a CRC commitment, and if ineligible, sentence Petitioner to no more than a four-year sentence, or (2) allow him to withdraw his plea.

On remand, the court sentenced Petitioner in case 36722 to the mid-term of four years for residential burglary. The sentences on the counts in case 97490 remained the same.

///

1  *Legal Standard*

2  A criminal defendant has a due process right to enforce the terms of his plea agreement.
3  Santobello v. New York, 404 U.S. 257 (1971). In California, "[a] negotiated plea agreement is a
4  form of contract, and it is interpreted according to general contract principles," People v. Shelton,
5  37 Cal.4th 759, 767 (2006), and "according to the same rules as other contracts." People v.
6  Toscano, 124 Cal.App.4th 340, 344 (2004). Under California law, a court must first look to the
7  plain meaning of the agreement's language. Cal.Civ.Code §§ 1638, 1644; Buckley v. Terhune,
8  441 F.3d 688, 695-696 (9th Cir. 2006) (internal citations omitted). To determine whether a plea
9  agreement was breached, the court must look to what the parties reasonably understood to be the
10 terms of the agreement. Buckley, 441 F.3d at 696-697; see also Toscano, 124 Cal.App.4th at 345
11 ("ambiguities [in a plea agreement] are construed in favor of the defendant").

12  In denying Petitioner's claim on appeal, the Court of Appeal explained:

> The first issue raised by Petitioner essentially amounts to request for reconsideration of our prior opinion in this case. Petitioner argues that, contrary to the conclusion this court reached the first time on appeal, he bargained for a *guarantee* of commitment to CRC, and if the court will not/cannot now commit him to CRC then he is entitled to withdraw his plea. We disagree that he was *guaranteed* CRC to begin with. Consistent with our prior opinion, the record reflects the trial court's minute order noting "4 Years State Prison. Possible CRC Commitment." Nevertheless, Petitioner contends he bargained for CRC only, and if he is not sent to CRC then he is not receiving the benefit of his bargain. He contends that the trial judge's oral statement that if Petitioner was recommended by a doctor (i.e., if he qualified) for CRC, then the judge would "suspend proceedings and commit him to the California Rehabilitation Center" rendered CRC the only disposition that can give him the benefit of his bargain. Petitioner ignores the fact, however, that he never showed up to be committed to CRC. And while it is true, as we pointed out in our prior opinion, that his failure to appear does not deprive him of the benefit of his bargain, the bargain he made was for 4 years state prison or CRC if he qualified. That part of his bargain was a CRC commitment if he qualified, and he no longer qualifies, does not, as we previously stated, "affect the validity of the plea he entered into nearly 9 [now almost 11] years ago where, as here, his ineligibility is due to his own conduct . . . ."
>
> This is not a case, like that cited by Petitioner, where the trial court failed to consider CRC because the officials involved apparently forgot to do so. (See *People v. Newton* (1974) 42 Cal.App.3d 292.) Nor is it a case where CRC consideration was bargained for while the defendant was, unbeknownst to those bargaining, currently ineligible for CRC. To the contrary, Petitioner bargained for a CRC commitment if he qualified, and by the time he chose to appear for sentencing, he did not qualify. The trial court did not err in holding him to the plea he entered for 4 years in state prison.

27  The state courts' opinion was not contrary to, or an unreasonable application of, clearly
28 established Supreme Court precedent. As the Court of Appeal explains, the January 22, 1996,

1   Minute Order reflecting the change of plea states the plea agreement as, "4 Years State Prison.
2   Possible CRC Commitment. Criminal Proceedings Suspended. Dr. Berkson appointed pursuant
3   to 3051WI." Lodged Doc. 1, at 41. During the hearing, the trial judge stated that if Petitioner
4   enters the plea, he would be sentenced to four years in state prison, and he would also be referred
5   for a medical determination. Lodged Doc. 1, at 43. The judge continued, "And if he is found to
6   be so in that condition, I will suspend proceedings and commit him to the California
7   Rehabilitation Center." Lodged Doc. 1, at 43.

8   Although Petitioner takes issue with the use of the term "possible" in the minute order
9   and suggests that the trial judge stated on the record that CRC commitment was *not*
10  discretionary, Petitioner does not give enough weight to the judge's warning immediately after
11  Petitioner changed his plea:

12      The Court:    I want to advise you that the indicated sentence that I have given today is -
                     I will not follow that if you fail to appear for sentencing in this matter. Do
13                   you understand that?

14      Petitioner:   Yes, sir.

15  Lodged Doc. 1, at 45-46.

16  Petitioner does not dispute that he did not appear for sentencing. When he was finally
17  sentenced in case 36722, he was likely no longer a candidate for CRC commitment because of
18  his subsequent convictions. Contending that the condition of "qualifying" was meant in a
19  medical sense, rather than a legal sense, he believes that this entitles him to withdraw his plea.
20  Petitioner makes an interesting argument, but he is incorrect. The due process clause entitles him
21  to receive the benefit of his plea bargain, and he did receive the benefit when he was sentenced to
22  four years after he was presumptively ineligible for a CRC commitment. The due process clause
23  does not, as Petitioner suggests, allow him to benefit from his failure to appear at sentencing.

24  Insofar as Petitioner cites Cunningham v. California, 549 U.S. 270 (2007), Blakely v.
25  Washington, 542 U.S. 296 (2004) and Apprendi v. New Jersey, 120 S.Ct. 2348, 2351 (2000),
26  these cases are inapplicable to his sentence as they apply only to sentences beyond the statutory
27  maximum. Petitioner was sentenced to the mid-term of four years for residential burglary.

28  Petitioner's claim is without merit and should be denied.

8

D.     Use of Case 36722 as a Strike in Case 97490

Premised on his first argument, Petitioner contends that because he should have been allowed to withdraw his plea in case 36722, it should not have been used to enhance his sentence in case 97490. Because his first argument fails, this argument fails, as well.

As an alternative, Petitioner argues that the trial court abused its discretion by not striking case 36722 as a prior for sentencing purposes in case 97490. He believes that the prior conviction should have been stricken given the "irregularity" of the plea. Federal habeas relief, however, is not available on this issue of state law. Mere errors in the application of state law are not cognizable on habeas corpus, Estelle v. McGuire, 502 U.S. 62, 67-68 (1991), unless the state-law error "so fatally infected the proceedings as to render them fundamentally unfair" and thereby violated a petitioner's federal constitutional right to due process. Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir.1991). Therefore, his argument does not state a federally cognizable claim. See Williams v. Borg, 139 F.3d 737, 740 (9th Cir.1998) (holding that in habeas cases, "[ w ] e [ ] review only for constitutional violation, not for abuse of discretion"); see also Ely v. Terhune, 125 F.Supp.2d 403, 411 (C.D.Cal.2000) (habeas petitioner's claim that the trial court abused its discretion by refusing to strike one of his prior "strike" convictions is not cognizable in federal habeas).

Even assuming Petitioner could state a claim for relief, his argument fails. He cites no authority for the proposition that the Constitution required the trial court to strike any of his prior convictions. Further, the trial court properly considered Petitioner's background and the nature of his present offenses in determining whether to strike his prior felony convictions and no error is apparent from the record. See People v. Williams, 17 Cal.4th 148, 161 (1998) (in deciding whether to strike a prior conviction, the court must consider "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part. . .").

At sentencing, the trial court set forth Petitioner's lengthy criminal history, which spanned 34 years and included 12 prior felony convictions, 13 misdemeanor convictions and

1 seven violations of probation. After setting forth each conviction, the court concluded that
2 Petitioner had engaged in violent conduct, had numerous prior convictions as an adult, had
3 served a prior prison term, was on parole when he committed the current crime, and had an
4 unsatisfactory performance on parole. The court therefore denied the motion to strike the prior.
5 Lodged Doc. 3, at 288-289.

Petitioner's claim is therefore without merit and should be denied.

E. <u>Sentencing Error</u>

Finally, Petitioner contends that the trial judge "erroneously believed that consecutive sentences were mandatory" and therefore imposed the sentences without stating reasons for doing so.

Like his previous claim, this argument presents an issue of state law for which habeas review is not available. See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 2004) ("The decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus.").

Nevertheless, as the Court of Appeal found, any error was harmless:

> Petitioner is correct that section 1170.20 did not require consecutive sentences here as the 1995 burglary plea was a prior conviction (for which he was now being sentenced) not a "current" conviction under the statute. (*People v. Rosbury* (1997) 15 Cal.4th 206, 209.) Nevertheless, we find no error.
>
> Nothing in this record affirmatively shows the trial court was unaware of its discretion to sentence Petitioner to concurrent sentences. A trial court's judgment is presumed to be correct and defendant, as the party attacking the judgment, must clearly and affirmatively demonstrate that the trial court relied on improper considerations in determining that consecutive sentences were appropriate. (See *People v. Superior Court (Du)*, (1992) 5 Cal.App.4th 822, 835.) Generally, if the record discloses that the trial court was unaware of its discretion or the scope of its discretion in sentencing, remand is required to allow the court to impose the sentence with full awareness of its discretion. (*People v. Fuhrman* (1997) 16 Cal.4th 930, 944; *People v. Sotomayor* (1996) 47 Cal.App.4th 382, 389-391.) However, even where it is clear the court misunderstood its sentencing discretion, remand is not required when the trial court's comments at the sentencing hearing indicate that the court would have declined to exercise any discretion toward leniency it may have had. (See *People v. Fuhrman, supra,* 16 Cal.4th at p. 944; *People v. Askey* (1996) 49 Cal.App.4th 381, 389; *People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8.) On the record before us, given the trial court's request for comments on the sentence and no indication that the court believed it was statutorily compelled to sentence Petitioner consecutively, we have no basis to conclude the court was unaware of its discretion to impose concurrent sentences in this case. More importantly, however, given the trial court's complete recitation of Petitioner's "unrelenting 34-year criminal history" (in the trial court's words), we easily conclude the trial court would decline to

exercise any discretion to impose concurrent sentences here. Thus, even assuming the court was unaware of its discretion and erroneously relied on the probation report, remand would result in no change in Petitioner's sentence. (*People v. Fuhrman, supra,* 16 Cal.4th at p. 944).

Petitioner contends that the Court of Appeal erred by relying on the harmless error standard. However, federal courts must defer to the state courts' interpretation of state sentencing laws. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Moreover, a determination of state law by a state appellate court is binding in a federal habeas action, Hicks v. Feiock, 485 U.S. 624, 629 (1988), unless the interpretation is an "obvious subterfuge to evade consideration of a federal issue." Mullaney v. Wilbur, 421 U.S. 684, 691 n. 11 (1975). There is no such indication here, and the Court must defer to the Court of Appeal's interpretation of the state harmless error standard. See also People v. Champion, 9 Cal.4th 879, 934 (1995) (finding that remand was not necessary even though court failed to set forth reasons for consecutive sentencing, given that it was inconceivable that the trial court would impose a different sentence).

Petitioner also attempts to raise an argument under the Apprendi line of cases, contending that there was no finding of a jury beyond a reasonable doubt to justify the imposition of consecutive sentences. On March 17, 2008, the United States Supreme Court granted certiorari to address the whether "the Sixth Amendment, as construed in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 127 L.Ed.2d 435 (2000), and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), requires that facts (other than prior convictions) necessary to imposing consecutive sentences be found by the jury or admitted by the defendant." See Oregon v. Ice, 128 S.Ct. 1657, 170 L.Ed.2d 353 (2008). The case is still pending and the issue has not yet been decided. In fact, oral argument is set for October 15, 2008.

Following remand after the decision in Cunningham, the California Supreme Court revisited its ruling in People v. Black, 35 Cal.4th 1238 (2005). After analyzing the implications of consecutive sentences in light of Cunningham, the court stated, "The high court's decision in Cunningham does not call into question the conclusion we previously reached regarding consecutive sentences," which held that "imposition of [consecutive sentences] does not

implicate a defendant's Sixth Amendment rights." People v. Black, 41 Cal.4th 799, 821-823 (2007).

The Supreme Court's holdings in Apprendi, and its progeny, did not address a defendant's jury trial right as applied to the judge's authority to impose consecutive sentences. As a consequence, there is no clearly established Supreme Court authority finding that a defendant is entitled to a jury trial based on facts proved beyond a reasonable doubt prior to imposition of a consecutive sentence, and the state courts' rejection of this claim can not be considered to be contrary to or an unreasonable application of clearly established Supreme Court law.

Petitioner's claim is without merit and should be denied.

**RECOMMENDATION**

The Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **July 17, 2008**          **/s/ Dennis L. Beck**

                                   UNITED STATES MAGISTRATE JUDGE